UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES I-VIII,

       Plaintiffs,                                   Case No. 06-10214

v.                                          Honorable Patrick J. Duggan

COL. PETER MUNOZ, in his official
capacity as Director of the MICHIGAN
DEPARTMENT OF STATE POLICE,

       Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

At a Session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on October 31, 2006.

Present:    The Honorable Patrick J. Duggan
                   U.S. District Court Judge

In 1994, the Michigan legislature enacted the State's Sex Offenders Registration Act ("SORA"), MICH. COMPL. LAWS ANN. §§ 28.721-28.732, in response to Congress' enactment of the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071.  The Federal and State laws require individuals convicted of certain offenses, including violent sex offenses, to register specific personal information with State officials.  The Michigan legislature amended SORA in 1996, in order to comply with Congress' enactment of "Megan's Law" the same year.  Among other things, Megan's Law conditions certain State funding on the

State's creation of a public registry for the dissemination of certain information about convicted sex offenders "that is necessary to protect the public concerning a specific person required to register" as a sex offender. 42 U.S.C. § 14071. In response to Megan's Law, every State in the Nation has enacted some type of pubic sex offender registry ("PSOR").

Since that time, individuals in Michigan and across the country, whose names and personal information must be listed on their State's PSOR, have filed lawsuits raising various challenges to the State's sex offender registry law. In most, if not every case, those challenges have failed. Presently before this Court, however, is a challenge that apparently has never been raised: whether Michigan violates an individual's rights under the Substantive Due Process and/or the Equal Protection Clause when it publicly disseminates the individual's name and personal information on the PSOR, but the individual's sex offense conviction has been expunged and otherwise would be sealed from public view pursuant to the State's Setting Aside Convictions Act, MICH. COMPL. LAWS ANN. §§ 780.621-780.624. Contending that the State violates their Due Process and Equal Protection Rights by including them on the PSOR, Plaintiffs seek summary judgment. Defendant seeks dismissal or summary judgment with respect to Plaintiffs' complaint, arguing that their claims fail. The Court held a hearing on the parties' cross-motions on October 5, 2006.

**Background**

Plaintiffs are residents of Michigan who have been convicted of Fourth Degree

2

Criminal Sexual Conduct, a misdemeanor, MICH. COMPL. LAWS ANN. § 750.520e.[1]

Plaintiffs' convictions have been set aside pursuant to Michigan's Setting Aside

Convictions Act ("Setting Aside Act"). MICH. COMPL. LAWS ANN. §§ 780.621-780.624.

Under the Setting Aside Act, an individual convicted of not more than one offense,

except certain specified offenses, may file a motion at least five years following

imposition of the sentence for the conviction seeking to have the conviction set aside.

MICH. COMPL. LAWS ANN. § 780.621(2).  The judge who imposed the applicant's

sentence then may enter an order setting aside the conviction "[i]f the court determines

that the circumstances and behavior of the applicant from the date of the applicant's

conviction to the filing of the application warrant setting aside the conviction and that

─────────────────

[1]Section 750.520e defines Fourth Degree Criminal Sexual Conduct as sexual contact with another person where one of the following circumstances exist: (a) the other person is at least 13 years of age but less than 16 years of age and the actor is 5 or more years older; (b) force or coercion is used under certain circumstances; (c) the actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless; (d) the other person is related to the actor by blood or affinity; (e) the actor is a mental health professional and the sexual contacts occurs during or within 2 years after the period in which the victim is his or her client or patient; or (f) the other person is at least 16 years of age but less than 18 years of age and a student at a public or nonpublic school and the actor is a teacher, substitute teacher, or administrator of the school.  MICH. COMPL. LAWS ANN. § 750.520e.  Under Michigan law, "sexual contact" is defined as including:

> the intentional touching of the victim's or actor's intimate
> parts or the intentional touching of the clothing covering the
> immediate area of the victim's or actor's intimate parts, if that
> intentional touching can reasonably be construed as being
> for the purpose of sexual arousal or gratification, done for a
> sexual purpose, or in a sexual manner for:
> (i) Revenge.
> (ii) To inflict humiliation.
> (iii) Out of anger.

MICH. COMPL. LAWS ANN. § 750.520a(0).

setting aside the conviction is consistent with the public welfare . . ."  MICH. COMPL. LAWS ANN. § 780.621(9). When an individual's conviction is set aside, the person generally is considered not to have been previously convicted and the record of the conviction, sentence, and arrest, and the individual's fingerprints are sealed, except for certain nonpublic use.  MICH. COMPL. LAWS ANN. § 780.623.

Although individuals convicted of certain sex offenses may have their conviction set aside, the Setting Aside Act treats them somewhat differently than other individuals whose convictions are set aside.  Pursuant to the act: "If the conviction set aside pursuant to this act is for a listed offense as defined in section 2 of the sex offenders registration act, the applicant is considered to have been convicted of that offense for purposes of the sex offenders registration act."  MICH. COMPL. LAWS ANN. § 780.622(3). Similarly, SORA provides that individuals are deemed to have been convicted for purposes of the act even if their convictions subsequently were set aside pursuant to the Setting Aside Act.  MICH. COMPL. LAWS ANN. § 28.722(a)(1).  Thus, regardless of whether their convictions have been set aside, SORA specifically requires Plaintiffs' names, photographs, the offenses for which they were convicted, and other personal information (e.g. current address, physical description, and birth date) to be listed on the State's PSOR.  In Michigan, this information is accessible to the public in printed form and via the Internet.

The Michigan State Police is the State agency responsible for administering and complying with SORA's provisions.  Specifically, the department is responsible for establishing, maintaining, and making publicly available, a registry of persons required to register as sex offenders under the statute.  *See, e.g.,* MICH. COMPL. LAWS ANN. §

4

28.728.  Defendant Colonel Peter Munoz currently is the Director of the State Police.[2]

## Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. Construing the complaint in a light most favorable to the plaintiff and assuming that the plaintiff's factual allegations are true, the court must determine whether the complaint states a valid claim for relief.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421-33, 89 S. Ct. 1843, 1848-49 (1969)).  A court may dismiss a claim pursuant to 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552

---

[2]When Plaintiffs filed their complaint, Colonel Tadarial Sturdivant was the Director of the Michigan State Police.  He subsequently was replaced by Colonel Munoz. Pursuant to the parties' stipulation, entered July 18, 2006, Colonel Munoz was substituted as the Defendant in this case.

(1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323.  Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

## Applicable Law and Analysis

## Plaintiffs' Allegations

In their complaint, Plaintiffs allege that their inclusion on Michigan's PSOR, when their convictions have been set aside and the records of their convictions otherwise would be closed to public inspection, infringes their Fourteenth Amendment Rights under the United States Constitution.  Specifically, in their "first cause of action," Plaintiffs claim that they "have a constitutionally protected liberty interest and fundamental right to be left alone by not being falsely designated as currently dangerous sex offenders who pose a threat to the public safety."  *See* Compl. ¶ 69. Plaintiffs claim that, as a result of "being designated as currently dangerous sex offenders who pose a threat to the public safety," "they are unfairly stigmatized and threatened with ostracism," their personal safety has been threatened, and they have suffered loss of employment, loss of certain careers and loss of housing opportunities.

6

*See* Compl. ¶¶ 69 & 74.

In their "second cause of action," Plaintiffs assert that the State is infringing on their fundamental rights. Although Plaintiffs do not identify within this cause of action the specific fundamental rights being infringed, they refer earlier in their complaint to their right to privacy, *see id.* ¶ 9a, and claim that being branded as sex offenders causes them the following injuries:

> shame, humiliation, ostracism, loss of employment,
> decrease [in] employment opportunities, interference with
> business opportunity, loss of housing, interference with
> family and social relationships, loss of internships, and
> possible physical harm inflicted by members of the public
> who believe that Plaintiffs pose a threat to public safety.

*See id.* ¶ 66e. Lastly, Plaintiffs allege that the State is violating their rights under the Equal Protection Clause because it is providing different treatment to similarly situated individuals– i.e., individuals whose convictions have been expunged under the Setting Aside Act. As Plaintiffs explain, the records of most individuals whose convictions have been set aside remain sealed, whereas the records of individuals convicted of certain sex offenses remain open to the public.

### Plaintiffs' Claim that They Are Being Falsely Designated as Currently Dangerous Sex Offenders

Plaintiffs' first cause of action essentially is foreclosed by the United States Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 123 S. Ct. 1160 (2003), and the Sixth Circuit's subsequent decision in *Fullmer v. Michigan Department of State Police*, 360 F.3d 579 (2004).[3] In the Supreme Court

---

[3]While the plaintiff in *Connecticut Department of Public Safety v. Doe*, premised his argument only on procedural due process, this Court still finds the Supreme Court's

7

case, the plaintiff challenged Connecticut's sex offender registry on procedural due
process grounds because the registry did not provide individuals with a hearing to
determine their dangerousness before they were listed on the registry.  *Connecticut*
*Dep't of Public Safety*, 538 U.S. at 6, 123 S. Ct. at 1163-64.  The plaintiff claimed that
he was not a "dangerous" sex offender.  *Id.*, 123 S. Ct. at 1163.  The Supreme Court
rejected the plaintiff's challenge, finding that "dangerousness" or "current
dangerousness" is of no consequence under Connecticut's sex offender statute; rather,
the law's registry requirement turns on an offender's conviction alone.  *Id.* at 7, 123 S.
Ct. at 1164.  The Court noted that a disclaimer on the State's website listing individuals
registered as sex offenders "explicitly states that [the plaintiff's] alleged
nondangerousness simply does not matter."  *Id.*

        The Sixth Circuit likewise concluded in *Fullmer* that current dangerousness, and
even dangerousness, are of no consequence with respect to Michigan's SORA.  360
F.3d at 582.  Similar to Plaintiffs' allegation here, the plaintiff in *Fullmer* argued "that the
registration and public disclosure aspects of the act deprive him of a constitutionally
protected liberty interest 'by stigmatizing him as a presently dangerous sex offender and
imposing intrusive reporting obligations . . ."  *Id.* at 581.  The Sixth Circuit rejected the
plaintiff's challenge based on *Connecticut Department of Public Safety v. Doe*,
observing that, like Connecticut's registry, "Michigan's registry is based solely upon the
fact of an offender's conviction; the registry website does not indicate that a

---

decision controlling with respect to Plaintiffs' first claim.  Nevertheless, the plaintiff in
*Fullmer* relied on the substantive due process component of the Due Process Clause to
raise the same challenge to his inclusion on the State's PSOR as Plaintiffs raise in their
first cause of action.

determination has been made concerning the dangerousness of those listed in the registry, but only that the registrants are convicted sex offenders."[4] *Id.* at 582. In fact, the Sixth Circuit found that the information on the website "makes it clear to anyone accessing the registry that *all* sex offenders convicted after a certain date are listed, without exception." *Id.*

Thus even if Plaintiffs could claim a liberty interest in "not being falsely designated as currently dangerous sex offenders," Michigan's PSOR does not designate individuals listed on the registry as dangerous. The Court finds Plaintiffs' first cause of action foreclosed by the Supreme Court's and Sixth Circuit's previous decisions.

### Plaintiffs' Claim Alleging Infringement of Their Fundamental Rights

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. This provision has been interpreted as encompassing a procedural and substantive component.[5] Plaintiffs contend that SORA violates their substantive due process rights in that it imposes a stigma upon them and infringes upon additional fundamental rights, specifically their

---

[4]Michigan's sex offender registry website provides: "The [Michigan State Police] has not considered or assessed the specific risk of re-offense with regard to any individual prior to his inclusion on the PSOR and has made no determination that any individual included in the PSOR is currently dangerous." http//www.mipsor.state.mi.us (last visited 9/28/06).

[5]Plaintiffs concede that any procedural due process challenge to Michigan's SORA is foreclosed by the Supreme Court's decision in *Connecticut Department of Safety v. Doe.* *See* Pls.' Br. in Support of Mot. at 9.

right to privacy, housing, employment, educational opportunities, and family relationships.

As Plaintiffs acknowledge, "reputation alone is not a constitutionally protected liberty or property interest." *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999) (citing *Paul v. Davis*, 424 U.S. 603, 701, 96 S. Ct. 1155, 1160-61 (1976)).  "The Due Process Clause is implicated only when state conduct alters 'a right or status previously recognized by state law.'"  *Id.* (citing *Paul*, 424 U.S. at 711, 96 S. Ct. at 1155).  This is referred to as the "stigma-plus" test.  *Id.*

Courts evaluating State sex offender registry statutes similar to SORA, and the Michigan act itself, have concluded that the statutes do not deprive the individuals who must register of a right to employment or housing sufficient to satisfy the plus factor of the stigma-plus test.  *See, e.g., Cutshall*, 193 F.3d at 479-80 (finding that Tennessee's statute does not interfere with any right to employment held by registrants as it does not limit the ability of registrants to seek and obtain *any* type of employment); *Doe v. Moore*, 410 F.3d 1337 (11th Cir. 2005) (rejecting the plaintiffs' assertion that Florida's act infringes their rights to find and/or keep any housing and to find and/or keep any employment); *Akella v. Michigan Dep't of State Police*, 67 F. Supp. 2d 716, 728-29 (E.D. Mich. 1999) (rejecting argument similar to that in *Doe v. Moore* in a challenge to Michigan's act).  As the Sixth Circuit explained in *Cutshall* with respect to employment– which this Court finds equally applicable to Plaintiffs' claims concerning housing and educational opportunities:

> "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation."

> *Gregory v. Hunt*, 24 F.3d 781, 788 (6th Cir. 1994) . . . In this case, the Act does not limit the ability of registrants to seek and obtain *any* type of employment.

193 F.3d at 479 (emphasis added).  This Court does not find the present case distinguishable from *Cutshall*, *Doe v. Moore*, or *Akella* based on the fact that Plaintiffs' sex offense convictions have been set aside.

The remaining rights Plaintiffs identify as infringed by SORA relate to privacy. "While there is no 'right to privacy' found in any specific guarantee of the Constitution, the [Supreme] Court has recognized that 'zones of privacy' may be created by the more specific constitutional guarantees and thereby impose limits upon government power." *Paul v. Davis*, 424 U.S. at 712-13, 96 S. Ct. at 1166.  In *Whalen v. Roe*, the Supreme Court identified two different kinds of constitutionally recognized privacy interests described in its prior decisions: (1) "the individual interest in avoiding disclosure of personal matters" and (2) "the interest in independence in making certain kinds of important decisions."  429 U.S. 589, 598-600, 97 S. Ct. 869, 876 (1977).  Plaintiffs claim a violation of both types of privacy interests.

With regard to the first category, the Supreme Court has held that the personal rights found in this guarantee of personal privacy are limited to those areas which are "fundamental" or "implicit in the concept of ordered liberty."  *Roe v. Wade*, 410 U.S. 113, 152, 93 S. Ct. 705, 726 (1973).  "The activities detailed as being within this definition . . . relat[e] to marriage, procreation, contraception, family relationships, and child rearing and education."  *Paul v. Davis*, 424 U.S. at 713, 96 S. Ct. at 1166.  While Plaintiffs allege that SORA infringes upon these activities, like the plaintiff in *Paul v. Davis*, their "claim is far afield from [the Supreme Court's] line of decisions."  *Id.*

11

The plaintiff in *Paul v. Davis*, who had been arrested but never convicted of shoplifting, claimed that disclosure of his name and photograph on a list of "active shoplifters" and the resulting harm to his reputation interfered with his fundamental rights.  The Supreme Court rejected his challenge, reasoning that "[h]is claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest."  *Id.*  As the Sixth Circuit concluded in another case, where the plaintiffs claimed that a Tennessee statute permitting the disclosure of adoption records infringed upon their "familial" and "reproductive" rights, a statute that does not place restrictions on the State's citizens' freedom to marry, raise their children, or adopt does not infringe those fundamental rights.  *Doe v. Sundquist*, 106 F.3d 702, 705-06 (6th Cir. 1997).

Similarly, SORA does not restrict Plaintiffs' decisions with respect to marriage, procreation, contraception, family relationships, child rearing or education.  Any impact on those activities arises from the public's perception of Plaintiffs due to their inclusion on the PSOR, not from any restriction the State has placed on those activities.  The fundamental right to privacy identified by the Supreme Court, however, only protects individuals from State action.

The Court now turns to the second "privacy" principle– the right to control the dissemination of sensitive information about oneself.  Several courts, including this Court, already have concluded that this privacy right is not violated when the State releases to the public personal information about a convicted sex offender.  *Cutshall*, 193 F.3d at 481; *Paul P. v. Verniero*, 170 F.3d 396, 403-04 (3d Cir. 1999); *Akella*, 67 F.

12

Supp. 2d at 729.  Plaintiffs argue that those decisions are distinguishable because the

convictions and records of the plaintiffs in those cases had not been set aside and

sealed from public view and therefore the plaintiffs' inclusion on the PSOR only resulted

in the dissemination of information already available in public records.  Plaintiffs'

argument fails for two significant reasons.

First, the Sixth Circuit has narrowly construed the Supreme Court's cases

discussing any constitutional right to informational privacy, concluding that the right only

extends to interests implicating a fundamental liberty interest.  *Flaskamp v. Dearborn*

*Public Sch.*, 385 F.3d 935, 945 (6th Cir. 2004); *see also Bloch v. Ribar*, 156 F.3d 673,

684 (6th Cir. 1998); *M.R. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981).  Absent the

implication of a fundamental liberty interest, the Sixth Circuit explicitly has rejected the

need to balance the State's interest in disclosure against the individual's interest in

keeping certain matters private.  *DeSanti*, 653 F.2d at 1089. As the *DeSanti* court

explained:

> Absent a clear indication from the Supreme Court we will not
> construe isolated statements in [its prior decisions] more
> broadly than their context allows to recognize a general
> constitutional right to have disclosure of private information
> measured against the need for disclosure.  Analytically we
> are unable to see how such a constitutional right of privacy
> can be restricted to anything less than the general "right to
> be let alone" that Justice Brandeis called for in *Olmstead v.*
> *United States*, 277 U.S. 438, 478, 48 S. Ct. 564, 572, 72
> L.Ed. 944 (1928)(Brandeis, J., dissenting). . . . The Framers
> rejected a provision in the Constitution under which the
> Supreme Court would have reviewed all legislation for its
> constitutionality.  They cannot have intended that the federal
> courts become involved in any inquiry nearly as broad [as]
> balancing almost every act of government, both state and
> federal, against its intrusion on a concept so vague,
> undefinable, and all-encompassing as individual privacy.

13

> . . .
> For all of the foregoing reasons we conclude that the
> Constitution does not encompass a general right to
> nondisclosure of private information.  We agree with those
> courts that have restricted the right of privacy to its
> boundaries as established in *Paul v. Davis*, *supra*, and *Roe
> v. Wade*, 410 U.S. at 152, 93 S. Ct. at 726[, as] those
> personal rights that can be deemed "fundamental" or "implicit
> in the concept of ordered liberty."

653 F.2d at 1089-90 (internal footnote omitted).

*DeSanti* is particularly instructive in the present case because it involved a

challenge to a State law requiring the compilation of the social histories of juveniles

appearing in the State's juvenile courts on complaints of delinquency, unruliness,

neglect, dependency, and abuse and allowed for the dissemination of the social

histories to numerous governmental and non-governmental agencies where the

information otherwise would be sealed from public view.  The court held that the State's

disclosure of the information did not violate the limited constitutionally recognized right

to privacy recognized by the Sixth Circuit.  Similarly, disseminating Plaintiffs' personal

information on the PSOR does not implicate personal rights that are fundamental or

implicit in the concept of ordered liberty.

The Sixth Circuit has extended the right to keep private matters from being

publicly disclosed to instances where the publication of the information created a

serious risk to the personal safety of the plaintiffs.  *Kallstrom v. City of Columbus*, 136

F.3d 1055, 1063 (6th Cir. 1998).  In *Kallstrom*, undercover police officers brought a civil

rights action pursuant to 42 U.S.C. § 1983, alleging that their rights under the Due

Process Clause were violated by the City's disclosure of certain personal information

from their personnel files.  *Id.* at 1059-60.  The City had provided the information to

14

counsel for alleged drug co-conspirators who were members of a local gang known for its propensity for violence and intimidation. *Id.* at 1063. Although finding that the disclosure rose to constitutional dimensions, the court emphasized the limited scope of its holding to the circumstances presented in the case:

> In finding that the City's release of private information concerning the officers to defense counsel . . . rises to constitutional dimensions by threatening the personal security and bodily integrity of the officers and their family members, we do not mean to imply that every governmental act which intrudes upon or threatens to intrude upon an individual's body invokes the Fourteenth Amendment. But where the release of private information places an individual at substantial risk of serious bodily harm, possibly even death, from a perceived likely threat, the "magnitude of the liberty deprivation . . . strips the very essence of personhood."

*Id.* at 1064 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 506-07 (6th Cir. 1996)).

In the present case, there is no evidence suggesting that the personal security of Plaintiffs or their family are placed at substantial risk as a result of Plaintiffs' listing on the PSOR. Plaintiffs only allege a "*possible*" risk of harm, *see* Compl. ¶ 66e; however, they fail to offer any evidence to support this allegation. Plaintiffs submit documentation indicating that they have been harassed due to their inclusion on the PSOR. *See, e.g.,* Pls.' Supp. Materials at 5 & 7. Harassment, however, is not equivalent to the "substantial risk of serious bodily harm" identified in *Kallstrom* as sufficient to deprive an individual of his or her liberty. The Court further notes that Michigan's Public Sex Offender Registry website contains an explicit warning that the "[i]nformation listed on the registry shall not be used to threaten, intimidate, or harass another" and that "ANYONE WHO USES THIS INFORMATION TO COMMIT A CRIMINAL ACT

15

AGAINST ANOTHER PERSON IS SUBJECT TO CRIMINAL PROSECUTION."

http://www.mipsor.state.mi.us. (capitalization in original) (last visited on Oct. 30, 2006).

The second reason why Plaintiffs are not able to distinguish their privacy claim from the claim of individuals whose convictions have not been set aside is the fact that, as a result of the Michigan legislature's enactments, Plaintiffs do not have a greater interest in privacy than the typical sex offender. Michigan law does not guarantee Plaintiffs a right to privacy in their sex offense arrests and/or convictions. Instead, the Michigan legislature specifically has provided in SORA and the Setting Aside Act that individuals convicted of a sex offense whose convictions are set aside still are deemed "convicted" under SORA and must register. MICH. COMPL. LAWS ANN. §§ 28.722(a)(1) and 780.622(3). Thus Plaintiffs cannot claim a State created privacy right in their criminal records. Whether it is constitutionally permissible for the legislature to treat convicted sex offenders differently than individuals convicted of other crimes raises Equal Protection not Due Process concerns.

### Plaintiffs' Equal Protection Claim

"[T]he Equal Protection Clause provides that 'all persons similarly situated should be treated alike.'" *Cutshall*, 193 F.3d at 482 (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985)). "Unless the classification under attack involves a suspect class, the classification need only be rationally related to a legitimate government goal to survive constitutional challenge." *Id*. In *Cutshall*, the Sixth Circuit held that "[c]onvicted sex offenders are not a suspect class." *Id*. Thus this Court must apply rational-basis review to analyze Plaintiffs' Equal Protection claim.

A statute is considered constitutional under the rational basis test when "there is any reasonably conceivable state of facts that could provide a rational basis for [the law]." *FCC v. Beach Commc'n, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 2012 (1993). As Justice Thomas, writing for the Court in *Beech Communications*, further summarized the Supreme Court's previous pronouncements regarding this test:

> Where there are plausible reasons for Congress' action, our inquiry is at an end.  This standard of review is a paradigm of judicial restraint.  The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.  On rational-basis review, a classification in a statute . . . comes to us bearing a strong presumption of validity . . . and those attacking the rationality of the legislative classification have the burden to negate every conceivable basis which might support it . . .

*Id.* at 313-15, 113 S. Ct. at 2101-02 (internal citations and quotation marks omitted). Justice Thomas went on to explain that it is irrelevant to the Court's analysis whether the legislature actually articulated the conceived reason for the challenged distinction. *Id.* at 315, 113 S. Ct. at 2102.  Finally, Justice White provided in another case that the Court "will not overturn . . . a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the Court] can only conclude that the legislature's actions were irrational."  *Vance v. Bradley*, 440 U.S. 93, 97, 99 S. Ct. 939, 943 (1979).

Defendant argues that the Michigan legislature's disparate treatment of sex offenders whose convictions have been set aside is rational in light of "the great potential harm to the public presented by sex offenders."  *See* Def.'s Mot. at 18.

17

Undoubtedly various courts, including the U.S. Supreme Court, have declared that "'[s]ex offenders are a serious threat in this Nation.' . . . and 'when convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sex assault.'" *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. at 4, 123 S. Ct. at 1163 (quoting *McKune v. Lile*, 536 U.S. 24, 32-33, 122 S. Ct. 2017 (2002)). These courts therefore have upheld the creation of public sex offender registries by the States' legislatures as a means to protect their communities from sex offenders and to help apprehend repeat offenders. *Id*.

Judge Edmunds found this reason rationally related to Michigan's disparate treatment of sex offenders assigned to youthful trainee status under the State's Holmes Youthful Trainee Act ("HYTA"). *Doe v. Sturdivant*, 2005 WL 2769000, at *8 (E.D. Mich. Oct. 25, 2005). That case is similar to the one now before this Court in that, under the HYTA, an individual who pleads guilty to a criminal offense committed on or after the individual's seventeenth birthday but before his or her twenty-first birthday may have the disposition expunged and the record sealed from public inspection upon successful completion of youthful trainee status. MICH. COMPL. LAWS ANN. § 762.14. The two cases are dissimilar, however, in that assignment to HYTA status is not dependent on a court's finding that expungement is consistent with the public's safety*, see* MICH. COMPL. LAWS ANN. § 762.14; whereas, a court may set aside a conviction under the Setting Aside Act *only if* the court concludes that doing so "is consistent with the public welfare." MICH. COMPL. LAWS ANN. § 708.621(9).

Nevertheless, in enacting SORA, the Michigan legislature has set forth a rational basis for treating convicted sex offenders differently than other convicted criminals and

18

the fact that this reason may be founded on generalizations which are untrue for some individuals within the class (such as individuals whose convictions have been set aside based on a finding that they do not pose a future danger to society) does not render the State's law unconstitutional. *See Gregory v. Ashcroft*, 501 U.S. 452, 111 S. Ct. 239 (1991) (upholding Missouri's mandatory retirement for state court judges based on age, even though "[i]t is far from true that all judges suffer significant deterioration in performance" after a certain age). As the Supreme Court has made clear, a statute does not violate the Equal Protection Clause merely because the classification made by the law is imperfect. *Id.* at 473, 111 S. Ct. at 2407 (quoting *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 316, 96 S. Ct. 2562, 2568 (1976)). A statute also does not violate the Equal Protection Clause simply because it is overinclusive or underinclusive. *Vance v. Bradley*, 440 U.S. at 108, 99 S. Ct. at 948 (citing *Phillips Chem. Co. v. Dumas Sch. Dist.*, 361 U.S. 376, 385, 80 S. Ct. 474, 480 (1960)). Thus, while this Court seriously questions whether the stated goal of SORA is accomplished by the inclusion of individuals such as Plaintiffs– who state court judges specifically have determined do not pose a future threat to the community– it is bound by the Supreme Court's guidelines for applying rational-basis review. Following the Court's instructions, this Court must conclude that SORA does not violate Plaintiffs' rights under the Equal Protection Clause.[6]

_____

[6]Thus the fact that this Court believes that it would be preferable, more just, and still likely to achieve the legislature's goals, if SORA exempted individuals like Plaintiffs from its public registry requirement, does not mean that the legislature's failure to do so renders the statute constitutionally infirm. As this Court noted in *Akella* with respect to its belief that a classification based on severity of the offense, as exists in some other States, should be included in Michigan's SORA:

**Conclusion**

In conclusion, the Court finds that Plaintiffs' rights to Due Process and Equal

Protection are not violated by the State's inclusion of their personal information on its

public sex offender registry.  The Court therefore holds that SORA survives Plaintiffs'

constitutional challenge.

Accordingly,

**IT IS ORDERED**, that Plaintiffs' motion for summary judgment is **DENIED**;

---

The Legislature has the right to enact legislation that many
citizens would consider "harsh" or "unfair."  These citizen
beliefs do not make such laws unconstitutional.

67 F. Supp.2d at 728 n.2.  As the Supreme Court stated in *Beech Communications*:
"'Only by faithful adherence to this guiding principle of judicial review of legislation is it
possible to preserve to the legislative branch its rightful independence and its ability to
function.'"  508 U.S. at 315, 113 S. Ct. at 2102.  Thus this Court must uphold SORA's
classification despite the Court's perceived belief that it may be premised on the
legislature's unfounded and irrational fear or belief that all classes of sex offenders must
be publicly listed in order to protect the citizens of this State.

20

**IT IS FURTHER ORDERED**, that Defendant's motion to dismiss or, in the

alternative, for summary judgment **GRANTED**.


                                    s/PATRICK J. DUGGAN
                                    U. S. DISTRICT JUDGE
Copies to:
Thomas Lazar, Esq.
Margaret Nelson, Esq.